UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FREDERICK P. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13CV1638 HEA |
| | ) |
| TIMOTHY R. LANCASTER, et al., | ) |
| | ) |
| Defendants, | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [Doc. No. 72] and Defendants' Motion for Summary Judgment [Doc. No. 104]. Plaintiff opposes both Motions. For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is granted in part and denied in part, and Defendants' Motion for Summary Judgment is denied.

**Factual Background**

Mr. Frederick Davis ("Plaintiff") brings this action under 42 U.S.C. § 1983 and alleges that Defendants, in violation of his First Amendment rights, took adverse action against him in retaliation for an earlier action he filed against Defendant Lancaster and other prison officials in federal court. The earlier action, *Davis v. Webb*, 4:11CV1906 JAR (E.D.Mo.), also claimed retaliation.

At all times relevant to the Second Amended Complaint, Plaintiff was incarcerated at Potosi Correctional Center ("PCC"). Named as Defendants in this action are Timothy Lancaster (Administrative Investigator, PCC); Troy Steele (Warden, PCC); Fred Johnson (Deputy Warden, PCC); Robert Savage (Grievance Officer, PCC); Sheri Shawver (Case Manager, PCC); Stanley

Pruitt (Case Manager, PCC); Dan Bryan (Function Unit Manage, PCC); and Jamie Crump (Assistant Warden, PCC).

Plaintiff filed his initial complaint in *Davis v. Webb* on November 1, 2011. 4:11CV1906 JAR (E.D.Mo.) (Doc. No. 1). On September 11, 2012, the court in *Webb* denied the defendants' motion to dismiss. (Doc. No. 50). The court in *Webb* issued a case management order on October 18, 2012. (Doc. No. 58).

On October 26, 2012, Plaintiff went to work at his job in the metal chair factory at PCC. Upon arrival, Plaintiff was informed that prison officials were investigating the presence of a knife found in the shower in B Wing. That afternoon, the inmates who worked in the metal factory—including Plaintiff—were strip-searched and had their cells searched. The housing unit in its entirety was neither searched nor put on lock down.

Defendant Lancaster conducted an investigation into the origin of the knife. Plaintiff maintains that Defendant Lancaster's investigation was faulty for a number of reasons, including failing to rely on surveillance footage and failing to follow proper procedures. Lancaster interviewed 26 suspects and 2 witnesses. Bruce Nipper, an inmate employee at the metal factory, reported that another inmate had said to "keep an eye on" Plaintiff. Other inmates reported that the knife was made for use in a "black/white struggle" and that a black inmate planned to use it to stab a white inmate when the white inmate was released from administrative segregation. Plaintiff was identified as a suspect on October 29, 2012.

The same day, correctional officers Christi Pashia and Brian Hall delivered Plaintiff to temporary administrative segregation confinement ("TASC"). Pashia told Plaintiff he was under investigation, but she did not tell him the nature of the investigation. Plaintiff requested that he be given his TASC order. Pashia did not give him his TASC order. Another inmate who worked in the metal factory, inmate Salkil, was also placed in TASC.

Defendant Lancaster interviewed Plaintiff about the knife on October 30, 2012. Lancaster told Plaintiff that he was a suspect because Plaintiff was one of only two workers at the metal factory who were housed in B Wing. Plaintiff denied making the knife, and he asked Lancaster to submit him to a computer-voice stress analysis ("CVSA") test. Lancaster did not.

On November 1, 2012, Plaintiff was transferred from administrative segregation in housing unit 3B to administrative segregation in housing unit 2A. Housing unit 3B was typically used for TASC, and housing unit 2A was mostly used for long term segregation.

Defendant Steele received a letter on November 1, 2012, which was dated October 31, 2012, stating that Plaintiff and inmate Jordan made the knife. Defendant Steele placed inmate Jordan under investigation and in TASC on November 5, 2012. Defendant Lancaster discussed the letter with the inmate who had purportedly signed it, and the inmate denied doing so. Lancaster then compared the signature on the letter with the inmate's signature and found they did not match. Defendant Lancaster subsequently reported to Defendant Steele that the only information connecting inmate Jordan to the knife was the unreliable letter.

At Plaintiff's initial classification hearing on November 6, 2012, he was assigned to administrative segregation. Defendant Johnson approved the classification committee's recommendation for the safety and security of the institution because Plaintiff was suspected of making a knife at the metal factory

Plaintiff claims that the investigation was performed in retaliation for *Webb*, which included Lancaster as a defendant. Plaintiff's Second Amended Complaint, which was sworn before a notary and, accordingly, will be treated as an affidavit, includes statements Plaintiff claims various Defendants made during the investigation demonstrating their retaliatory motives. Plaintiff claims Defendant Lancaster made the following such statements:

"You won't file another lawsuit here."

"Whether you're involved or not, this will at least get you out of here."

"You're still here hey."

[Doc. No. 53 at ¶¶ 37, 81]. Plaintiff attributes the following statements to Defendant Pruitt:

"Stop filing lawsuits, when will you guys realize we run this prison?"

"You can get your legal material at another institution."

[*Id.* at ¶¶ 48, 82]. Finally, Plaintiff claims Defendant Bryan stated as follows:

"Lancaster wants you off the yard." (made in reference to Plaintiff's legal activities).

"Just drop the lawsuit."

[*Id.* at ¶ 80]. Plaintiff referenced some of these statements in his deposition as well. [Doc. No. 126-2, Plaintiff's Deposition at p. 16].

Plaintiff asked Defendant Bryan for his legal materials relating to the *Webb* case. Although Bryan told Plaintiff that he would procure them, he never did. Plaintiff did not have his legal materials from October 29, 2012, through November 14, 2012. During that time, Plaintiff filed three docket entries in *Webb*. 4:11CV1906 JAR (E.D.Mo.) (Doc. Nos. 59, 60, and 62). All of these filings related to his inability to litigate *Webb* as a result of his placement in administrative segregation.

Plaintiff submitted a qualified legal verification form to Defendant Shawver. However, she never processed it. Plaintiff alleges that Defendant Shawver submitted a false affidavit in *Webb* stating that she had never received a qualified legal verification form from Plaintiff. After Plaintiff filed a motion in *Webb* requesting an injunction ordering Defendant Shawver to provide him with a qualified legal verification form, she slid a second form under Plaintiff's door to cover up for her actions.

Plaintiff remained in administrative segregation at PCC until he was transferred to the Eastern Reception Diagnostic and Correctional Center ("ERDCC") on January 22, 2013.

## Procedural Background

Plaintiff initiated this action by Complaint filed on August 19, 2013, in which he alleged retaliation and deprivation of his access to court in violation of his First Amendment rights, as well as due process violations. [Doc. No. 1]. The Court reviewed the Complaint under 28 U.S.C. § 1915(e) shortly after it was filed, and dismissed Plaintiff's claims against several Defendants because Plaintiff's claims as to those Defendants were either legally frivolous or failed to state a claim. [Doc. No. 4]. By Memorandum and Order entered on November 14, 2013, the Court granted Defendants' Motion to Dismiss and dismissed all claims against Defendants, finding that Plaintiff had failed to state a claim. [Doc. No. 24].

On October 7, 2014, the Eighth Circuit Court of Appeals affirmed the dismissal of Plaintiff's access to court and due process claims, but reversed and remanded the dismissal of Plaintiff's retaliation claims. *Davis v. Lancaster*, 577 F. App'x 638 (8th Cir. Oct. 7, 2014). Plaintiff filed his Second Amended Complaint on November 25, 2014. [Doc. No. 53]. The Court subsequently denied Defendants' Motion to Dismiss Plaintiff's retaliation claims for failure to state a claim, on the grounds that the Eighth Circuit already ruled that Plaintiff had stated a claim for retaliation. [Doc. No. 68]. The Court also denied Defendants' Motion for Partial Summary Judgment predicated on Plaintiff's failure to exhaust, because Defendants did not include a statement of material facts with their Motion.

Defendants filed the instant Motion for Partial Summary Judgment on January 28, 2015, [Doc. No. 72], and the instant Motion for Summary Judgment on March 27, 2015, [Doc. No. 104].

## Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ.P. 56(e); *Anderson*, 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

**Discussion**

In Defendants' Motion for Partial Summary Judgment, it is argued that the only claims in Plaintiff's Second Amended Complaint for which Plaintiff properly exhausted his administrative remedies are his claims regarding 1) placement in TASC on October 29, 2012 without receiving his TASC order on that date; and 2) confinement in administrative segregation until January 22, 2013. Accordingly, Defendants request that the Court grant summary judgment in their favor as to Plaintiff's other, unexhausted, claims. The Court will grant Defendants' Motion for Partial Summary Judgment in part.

In Defendants' Motion for Summary Judgment they argue that they are entitled to summary judgment on Plaintiff's retaliation claim because he can neither show that he was subject to adverse action, nor that any alleged adverse action was motivated in any way by his filing of suit in *Webb*. The Court finds that genuine disputes of material fact exist as to these allegations and, accordingly, will deny Defendants' Motion for Summary Judgment.

**A.**     **Exhaustion**

Under the PLRA, a prisoner may not bring a § 1983 action unless he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is defined by the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199 (2007). Exhaustion under the PLRA means proper exhaustion, which is in compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). In order for a Missouri prisoner to satisfy this exhaustion requirement, he necessarily must avail himself of the administrative grievance process established by Missouri Department of Corrections:

> To initiate this process, an inmate must file an Informal Resolution Request ("IRR") within fifteen days of the date of the incident giving rise to the IRR. If the inmate is dissatisfied with the response to his IRR, he can file an Offender Grievance within seven working days of receiving the response. If the inmate is dissatisfied with the response to his Grievance, he can file a Grievance Appeal within seven days of receiving that response. The failure to file timely appeal will

> result in the appeal being considered abandoned. Only after the inmate receives a response to his Appeal is the administrative grievance procedure exhausted.

*Wewerka v. Roper*, No. 4:09CV1973 CDP, 2010 U.S. Dist. LEXIS 118058, 2010 WL 4628093, at *2 (E.D. Mo. Nov. 8, 2010); *see also Dykes v. Murphy*, No. 4:09CV1062 HEA, 2010 U.S. Dist. LEXIS 54328, 2010 WL 2287496, at *4 (E.D. Mo. Jun. 3, 2010); *Hahn v. Armstrong*, No. 1:08CV0169 LMB, 2010 U.S. Dist. LEXIS 12087, 2010 WL 575748, at *3 (E.D. Mo. Feb. 11, 2010). Each IRR is "limited to one grievable issue and should not be expanded to include other issues at any stage of the review process." [Doc. No. 139-1, Offender Grievance Manual, at III(E)(3)(b)].

Defendants contend that Plaintiff's only properly exhausted claims are his allegations regarding 1) placement in TASC on October 29, 2012 without receiving his TASC order on that date; and 2) confinement in administrative segregation until January 22, 2013. Defendants argue that they should be granted summary judgment with respect to several allegations from Plaintiff's Second Amended Complaint which they contend were not properly exhausted. Specifically, Defendants request summary judgment as to the following allegations: that Plaintiff was denied access to courts and his legal files in retaliation for *Webb*; that Plaintiff was not allowed to take a CVSA test in retaliation for *Webb*; that Plaintiff was wrongfully investigated for having made a knife in retaliation for *Webb*; that Plaintiff was wrongfully transferred from one segregation unit to another in retaliation for *Webb*; that Defendant Savage refused to give Plaintiff a reprisal grievance form in retaliation for *Webb*; that Plaintiff was placed in danger by giving his enemy the impression that he had made a knife for use on this enemy; and that Plaintiff was wrongfully transferred out of PCC in retaliation for *Webb*.

1. **Plaintiff's First IRR**

Plaintiff filed two IRRs. Plaintiff's first IRR, PCC 12-1293, was filed on November 2, 2012, alleging that Plaintiff's due process rights were violated when he was placed in TASC, but

was not given a copy of his TASC order that day. [Doc. No. 73-1, Ex. A at 10]. On November 29, 2012, PCC officials responded to the IRR stating that Plaintiff did in fact receive a copy of his TASC order and, accordingly, denied PCC 12-1293. [*Id.* at 9]. Plaintiff filed an Offender Grievance of PCC 12-1293 on December 19, 2012, again stating that he did not receive a copy of his TASC order. [*Id.* at 5]. In response, PCC officials noted that, although irrefutable proof could not be provided to demonstrate that Plaintiff received a copy of his TASC order, it was standard practice to provide him one, and that, regardless, his requested relief—release from administrative segregation at PCC—had been obtained because he had been transferred to general population at ERDCC. [*Id.*]. Plaintiff filed an Offender Grievance Appeal on February 22, 2013, which expanded the scope of his initial IRR from the original one grievable issue of not receiving a copy of his TASC order, to claiming he was "locked up and transferred in retaliation for filing a lawsuit on Administrators at [PCC]." [*Id.* at 3]. Plaintiff also requested to be transferred back to PCC, released into the general population, and given his old job in the metal factory. [*Id.*]. The Appeal was denied on June 6, 2013. [*Id* at 2]. The denial of the Appeal addressed only the issue of receipt of the TASC order, finding that by all indications he received one, as is standard practice, and again noting that he was currently assigned to ERDCC. [*Id.*].

2. **Plaintiff's Reprisal Grievance**

In the interim between filing his first IRR on November 2, 2012, and his second IRR on November 21, 2012, Plaintiff filed a Reprisal Grievance on an "Offender Grievance Appeal" form on November 15, 2012. [Doc. No. 73-2 at 3–10]. Plaintiff's Reprisal Grievance raised claims including denial to accessing his legal files and courts, being transferred to another segregation unit, and due process violations. The Offender Grievance Manual defines a "reprisal" as "[r]etaliation by any staff member against any offender as a result of filing an

informal resolution request/offender grievance." [Doc. No. 139-1, D5-3.2 Offender Grievance Manual, at II(P)]. The Manual provides:

> If an offender believes that a reprisal has occurred, the offender may obtain an Offender Grievance Appeal form . . . from the grievance officer or unit classification staff and shall state the alleged reprisal and bypass filing an informal resolution request and grievance.

[*Id.* at III(D)(2)]. However, Plaintiff's Reprisal Grievance, which was comprised of an Offender Grievance Appeal form and seven attached pages, does not allege retaliation by PCC officials as the result of filing an IRR or Offender Grievance, but rather alleges retaliation in response to *Webb*. Indeed, Plaintiff's Reprisal Grievance did not mention his first IRR.

The Offender Grievance Manual explains how such a filing should be handled by prison staff:

> If the division director/designee determines that the complaint is not a reprisal, the original grievance appeal will be sent back to the grievance officer at the institution from which the complaint was initiated and will include a letter notifying the offender that the complaint is not a reprisal for deliver to the offender.
>
> Upon receipt, the grievance officer will:
>     a.    deliver a copy of the grievance appeal to the offender and
>     b.    will instruct her/him to resubmit the complaint on the Informal Resolution Request form.

[*Id.* at III(D)(5)–(6)]. Following these guidelines, PCC staff sent Plaintiff a letter on December 11, 2012, advising him of the manual's definition of "reprisal," noting that his Reprisal Grievance presented no evidence of a reprisal occurring due to his participation in the grievance procedure, and advising him that he could request an IRR form if he wished to continue with his complaint. [Doc. No. 73-2 at 2].

    **3.    Plaintiff's Second IRR**

Plaintiff filed his second IRR, PCC 12-1348, on November 21, 2012. [Doc. No. 73-3 at 31–35]. In Plaintiff's second IRR, he claimed that Defendants were holding him in

administrative segregation and investigating him for the knife incident in retaliation for *Webb*. He further claimed that Defendant Lancaster asked if Plaintiff would take a CVSA test, but then refused to allow him to take one. Plaintiff further claims to have been transferred to another administrative segregation unit on November 1, 2012.

Plaintiff's second IRR was denied on January 3, 2013. [Doc. No. 73-3 at 30]. The denial summarized the nature of the IRR: "You state that you are being held in Administrative Segregation unjustly and that you believe it is due to the fact that you filed a 'law suit' that you filed against AIO Lancaster." [*Id.*]. Plaintiff filed an Offender Grievance of PCC 12-1348 on January 22, 2013, which was twenty three pages long, and expanded the scope to include claims that he was denied access to his legal files/access to court, that Defendant Savage refused to give him a Reprisal Grievance form, and that Defendant Shawver did not properly process his qualified legal claim form. [Doc. No. 73-3 at 6–29]. Plaintiff's Offender Grievance was denied on March 12, 2013, with the notation that Plaintiff had "failed to provide information to support [his] allegations." [*Id.*]. Plaintiff filed an Offender Grievance Appeal on March 27, 2013, 2013, which was denied on July 1, 2013. [*Id.* at 3–4].

### 4. Defendants' Motion for Partial Summary Judgment is Granted in Part and Denied in Part

Contrary to Defendants' argument, Plaintiff made several of the claims for which Defendants now seek summary judgment in his second IRR, PCC 12-1348. Plaintiff therein claimed that he was retaliated against in response to *Webb* by being: wrongfully investigated for the knife incident, denied the opportunity to take a CVSA test, and wrongfully transferred from one segregation unit to another segregation unit. [Doc. No. 73-3 at 31–35]. Defendants assert that "[a]lthough Plaintiff attaches pages to his IRRs, grievance forms, and grievance appeal forms, each IRR is 'limited to one grievable issue and should not be expanded to include other issues at any stage of the review process.'" [Doc. No. 73 at 12] [quoting *Toney v. Hakala*, 2012 WL

1185028 at *2 (E.D. Mo. Apr. 9, 2012), and Offender Grievance Manual at III(E)(3)(b)]. Defendants further argue that "[t]he one grievable issue in both the Reprisal Grievance and PCC 12-1348 is Plaintiff's alleged improper and retaliatory confinement in administrative segregation at PCC from October 30, 2012 until January 22, 2013," and "Plaintiff could have filed IRRs on each of the other alleged incidents and conditions of confinement, but did not." [*Id.* at 12–13].

While the Court agrees with the statement that the one grievable issue of an IRR may not be expanded at later stages of the review process, Defendants have failed to cite case law demonstrating that Plaintiff's one grievable issue in PCC 12-1348—that he was subject to retaliation for his lawsuit in *Webb*—could not properly include the interrelated adverse actions taken against him. Accordingly, the Court finds that Plaintiff, by raising these issues in his second IRR, PCC 12-1348, and subsequently filing an Offender Grievance and an Offender Grievance Appeal, properly exhausted his claims that he was wrongfully investigated for the knife incident, denied the opportunity to take a CVSA test, and wrongfully transferred from one segregation unit to another segregation unit, all in retaliation for filing his lawsuit in *Webb*.

However, the Court will grant summary judgment in Defendants' favor as to Plaintiff's claims that he was denied access to courts and his legal files in retaliation for *Webb*; that Defendant Savage refused to give him a reprisal grievance form in retaliation for *Webb*; that he was placed in danger by giving his enemy the impression that he had made a knife for use on this enemy; and that he was wrongfully transferred out of PCC in retaliation for *Webb*. Although some of these issues were raised at later stages of the review process, the fact that they were not raised in an IRR, and that the expanded grounds were not addressed on the merits by PCC staff, means these claims were not properly exhausted and, under the PLRA, may not be raised in this action. *See* 42 U.S.C. § 1997e(a); *Hakala*, 2012 WL 1185028 at *2; *cf. Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (*per curiam*) (holding that "a grievance that could have been

denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on the merits.").

Similarly, although some of these claims were raised in Plaintiff's Reprisal Grievance, the Reprisal Grievance was properly denied on the grounds that it did not allege actions taken in retaliation for Plaintiff having filed an IRR. [*See* Doc. No. 139-1, D5-3.2 Offender Grievance Manual, at III(D)]. PCC staff, in following protocol, delivered to Plaintiff a copy of his denied Reprisal Grievance, and advised him that he could resubmit his complaint as an IRR, but the record does not reflect that Plaintiff did so.

For these reasons, Defendants' Motion for Partial Summary Judgment is granted in part, and summary judgment is granted in Defendants' favor as to Plaintiff's claims that he was denied access to courts and his legal files in retaliation for *Webb*; that Defendant Savage refused to give him a reprisal grievance form in retaliation for *Webb*; that he was placed in danger by giving his enemy the impression that he had made a knife for use on this enemy; and that he was wrongfully transferred from PCC to ERDCC in retaliation for *Webb*. Further, the Court will grant summary judgment as to Defendants Shawver and Savage, because these are the only claims alleged against them.

**B.     Retaliation**

In order to establish his retaliation claims under § 1983, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subject to adverse action; and (3) "the adverse action was motivated at least in part by the exercise of the protected activity." *Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015) (citing *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807–08 (8th Cir. 2012)). Defendants concede that Plaintiff "can show the first prong of his retaliation claim," because filing a civil rights law suit is a constitutionally protected activity. *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993); *Sanders v. St. Louis Cnty.*, 724 F.2d 665, 666

(8th Cir. 1983). However, Defendants contend that Plaintiff "cannot meet the second and third prongs of his claim" because "Defendants had reasonable, non-retaliatory reasons for taking the actions [Plaintiff] complains of, the filing of his lawsuit is too remote from the actions Defendants took to be considered retaliatory, uncontroverted evidence shows most of the actions were not adverse to [Plaintiff], the actions did not interfere with [Plaintiff's] ability to proceed with his lawsuit, and [Plaintiff] can show no actual evidence that Defendants' actions were motivated by retaliation." [Doc. No. 106 at 5–6]. Further, Defendants argue that Plaintiff "cannot show that 'but for' his lawsuit, Defendants would not have taken the actions they took in response to finding a knife in the 6 B-wing shower." [*Id.* at 6].

### 1. Adverse Action

Defendants argue that "[o]ther than confinement in administrative segregation, [Plaintiff] cannot show the other actions alleged were taken in retaliation were actually adverse to him." [Doc. No. 106 at 9]. The Court need not analyze whether Plaintiff can or cannot show that the other actions allegedly taken were adverse to him because, as Defendants ostensibly concede, placement in administrative segregation in an adverse action. *See Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004); *Taylor v. Bailey*, 2014 U.S. Dist. LEXIS 89280, at *20 (E.D. Mo. July 1, 2014); *Marshall v. Walker*, 2012 U.S. Dist. LEXIS 98013, at *8–9 (E.D. Ark. Feb. 13, 2012); *Smith v. Baker*, 2012 U.S. Dist. LEXIS 9116, at *5–6 n.1 (N.D. Iowa Jan. 26, 2012); *see also* Doc. No. 106-15, IS21-1.1 Temporary Administrative Confinement Manual. Regardless, "[t]he key question is whether the actions were taken in retaliation for engaging in protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) ("An inmate 'need not show a separate, independent injury as an element of his case' because 'when retaliatory conduct is involved, there is no independent injury requirement.'") (quoting *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)). Accordingly,

Plaintiff has created a genuine issue of material fact for purposes of his retaliation claim that an adverse action—placement in administrative segregation—was taken against him.

## 2. Causal Connection Between Protected Activity and Adverse Action

The Court finds that the statements attributed to several Defendants in Plaintiff's sworn Second Amended Complaint are sufficient to create a genuine issue of material fact that Plaintiff's placement in administrative segregation was "motivated at least in part by" his civil rights lawsuit. *Davis v. Lancaster*, 577 F. App'x 638, 639 (8th Cir. Oct. 7, 2014) (citing *Spencer*, 738 F.3d at 911); *see also id.* ("We note that Davis did not assert in his complaint that he was wrongfully disciplined; rather he asserted that impermissible retaliation was a motivating factor for adverse actions taken against him.").

Again, Plaintiff claims that Defendant Lancaster made the following statements:

"You won't file another lawsuit here."

"Whether you're involved or not, this will at least get you out of here."

"You're still here hey."

[Doc. No. 53 at ¶¶ 37, 81]. Plaintiff attributes the following statements to Defendant Pruitt:

"Stop filing lawsuits, when will you guys realize we run this prison?"

"You can get your legal material at another institution."

[*Id.* at ¶¶ 48, 82]. Finally, Plaintiff claims that Defendant Bryan stated as follows:

"Lancaster wants you off the yard." (made in reference to Plaintiff's legal activities).

"Just drop the lawsuit."

[*Id.* at ¶ 80].

Rather than dispute that these statements, taken as true, reveal a retaliatory intent, Defendants merely contend that the statements do not create a dispute of material fact because "[i]f Defendants had actually made the statements [Plaintiff] alleges, surely he would have

included them in every letter and court filing from the very first time he wrote his account of what happened when the knife was found in the shower and he was placed on TASC on October 29, 2012." [Doc. No. 106 at 16]. Defendants note, however, that Plaintiff failed to include some or all of these statements in a number of letters to PCC staff, filings in *Webb*, and his initial complaint in this action.

Defendants' argument is a question for the fact finder, rather than to whether the evidence creates a genuine issue of material fact. *See Lawrence v. Curators of the Univ. of Missouri*, 204 F.3d 807, 809 (8th Cir. 2000) (noting that the court "may [not] substitute its own views about the weight and credibility of the evidence for those of the jury where there is a genuine issue of material fact."). Indeed, Defendants note in their Reply that "not having included [the statements] in writings made at the time of the events taking place makes it *less likely* they actually happened." [Doc. No. 141 at 11] [emphasis added]. Such argument accentuates this question as one left for the finder of fact, rather than decided as a matter of law. Accordingly, the Court rejects this argument.

Defendants also note that Plaintiff initiated his lawsuit in *Webb* on November 1, 2011, and that he was placed in TASC nearly a year later, on October 29, 2012. On this basis, Defendants argue that "[f]iling a lawsuit a year before alleged retaliatory conduct is not sufficient causal connection for [Plaintiff] to prevail on his claim. [Doc. No. 106 at 9]. However, Defendants ignore the fact that the Court in *Webb* had recently denied the defendants' motion to dismiss and issued a case management order. The Court takes judicial notice of the fact that most *pro se* prisoner cases brought *in forma pauperis* in this Court are dismissed during 28 U.S.C. § 1915 pre-service review, or through the granting of a pre-answer motion to dismiss. Accordingly, it would follow logically that prison staff would be motivated to retaliate against an inmate after a lawsuit against them survived a motion to dismiss and a case management order was issued.

For this reason, the Court finds that the cases upon which Defendant rely for their temporal proximity argument are distinguishable. *See Reico v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008); *Kipp v. Missouri Highway Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001). The Court finds that the timing of relevant events here falls short of resolving the disputed issues of material fact created by the properly exhausted portions of Plaintiff's Second Amended Complaint.

### 3. Qualified Immunity

"At the summary judgment stage, a defendant is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Payne v. Britten*, 749 F.3d 697, 708 (8th Cir. 2014) (J. Riley, concurring) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

Viewing the facts in the light most favorable to Plaintiff, the evidence is that Defendants Lancaster, Steele, Johnson, Pruitt, Bryan, and Crump retaliated against Plaintiff in violation of his First Amendment rights because he filed a lawsuit. The right to file a lawsuit was clearly established at the time of the deprivation. *See Spencer*, 738 F.3d at 911 ("It is well established that the right to file a legal action is protected under the First Amendment.") (citing *Goff*, 7 F.3d at 736). Accordingly, Defendants Lancaster, Steele, Johnson, Pruitt, Bryan, and Crump are not entitled to qualified immunity.

## Conclusion

Based on the foregoing analysis, the Court grants in part and denies in part Defendants' Motion for Partial Summary Judgment. Further, the Court denies Defendants' Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 104] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment [Doc. No. 72] is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendants as to Plaintiff's claims that he was denied access to courts and his legal files in retaliation for *Webb*; that Defendant Savage refused to give him a reprisal grievance form in retaliation for *Webb*; that he was placed in danger by giving his enemy the impression that he had made a knife for use on this enemy; and that he was wrongfully transferred from PCC to ERDCC in retaliation for *Webb*.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendants Sheri Shawver and Robert Savage.

An appropriate Judgment will accompany this Opinion, Memorandum and Order.

Dated this 25th day of June, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE