IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FREDERICK P. DAVIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 4:13CV1638 HEA |
| | ) |
| TIMOTHY R. LANCASTER, et al. | ) |
| | ) |
|     Defendant. | ) |

### PLAINTIFF'S AMENDED TRIAL BRIEF

Pursuant to the Case Management Order, (Doc. 343), Plaintiff submits this amended trial brief.

**I.      INTRODUCTION**

Plaintiff brought claims in Count I of his Second Amended Complaint against Defendants Lancaster, Pruitt, Steele, Crump, Johnson, and Bryan ("Defendants") for retaliating and conspiring to retaliate against Plaintiff, in violation of the First Amendment. (Doc. 51-2 at ¶¶ 80-114.)

Defendants previously moved for summary judgment on Plaintiff's claims. (Doc. 4). The Court granted Defendants' Motion to Dismiss and dismissed all claims against Defendants, finding that Plaintiff had failed to state a claim. (Doc. 24). The Eighth Circuit Court of Appeals affirmed the dismissal of Plaintiff's access to court and due process claims, but reversed and remanded the dismissal of Plaintiff's retaliation claims. *Davis v. Lancaster, et. al.*, 577 Fed. Appx. 638, 640 (8th Cir. Oct. 7, 2014). The Court subsequently denied Defendants' Motion to Dismiss Plaintiff's retaliation claims for failure to state a claim, on the grounds that the Eighth Circuit already ruled that Plaintiff had stated a claim for retaliation. (Doc. 68).

Defendants subsequently filed a Motion for Partial Summary Judgment on January 28, 2015, (Doc. 72) and a Motion for Summary Judgment on March 27, 2015, (Doc 104). On June 25, 2015, the Court granted Defendants' Motion for Partial Summary Judgment in part by granting summary judgment in Defendants' favor as to Plaintiff's claims (1) that he was denied access to courts and his legal files in retaliation for *Webb*; (2) that Defendant Savage refused to give him a reprisal grievance form in retaliation for *Webb*; (3) that he was placed in danger by giving his enemy the impression that he had made a knife for use on this enemy; and (4) that he was wrongfully transferred from Potosi Correctional Center ("PCC") to Eastern Reception Diagnostic and Correctional Center ("ERDCC") in retaliation for Webb. (Doc. 142).

The Court determined that factual questions exist as to whether Defendants' took an adverse action against Plaintiff by (1) wrongfully investigating him for the knife incident, (2) denying him the opportunity to take a computer-voice stress analysis ("CVSA") test, and (3) wrongfully transferring him from temporary administrative segregation confinement ("TASC") unit to long term administrative segregation. (*Id*. at 14-15.) The Court further determined that factual questions exist as to whether these adverse actions were "motivated at least in part by" his civil rights lawsuit. (*Id*. at 15-17.). This case is set for jury trial on Monday, May 21, 2018 at 9:30 a.m. (Doc. 343).

II.     **FACTUAL BACKGROUND**

Mr. Frederick Davis ("Plaintiff") brought this action under 42 U.S.C. § 1983 alleging that Defendants, in violation of his First Amendment rights, took adverse action against him in retaliation for an earlier action he filed against Defendant Lancaster and other prison officials in federal court. (Doc. 142 at 1.) The earlier action, *Davis v. Webb*, 4:11CV1906 JAR (E.D.Mo.), also claimed retaliation. (*Id*.)

At all times relevant to the Second Amended Complaint, Plaintiff was incarcerated at Potosi Correctional Center ("PCC"). Named as Defendants in this action are Timothy Lancaster (Administrative Investigator, PCC); Troy Steele (Warden, PCC); Fred Johnson (Deputy Warden, PCC); Stanley Pruitt (Case Manager, PCC); Dan Bryan (Function Unit Manage, PCC); and Jamie Crump (Assistant Warden, PCC). (*Id*. at 1-2.)

On October 26, 2012, Plaintiff went to work at his job in the metal chair factory at PCC. Upon arrival, Plaintiff was informed that prison officials were investigating the presence of a knife found in the shower in B Wing. (*Id*. at 2.) That afternoon, the inmates who worked in the metal factory—including Plaintiff—were strip-searched and had their cells searched. (*Id*.) The housing unit in its entirety was neither searched nor put on lock down. (*Id*.)

Defendant Lancaster conducted an investigation into the origin of the knife. (*Id*.) The same day, correctional officers Christi Pashia and Brian Hall delivered Plaintiff and another inmate who worked in the metal factory, inmate Salkil, to temporary administrative segregation confinement ("TASC"). (*Id*.) Pashia told Plaintiff he was under investigation, but she did not tell him the nature of the investigation. Plaintiff requested that he be given his TASC order. Pashia did not give him his TASC order. (*Id*.) Defendant Lancaster interviewed Plaintiff about the knife on October 30, 2012. (*Id*. at 3.) Lancaster told Plaintiff that he was a suspect because Plaintiff was one of only two workers at the metal factory who were housed in B Wing. (*Id*.) Plaintiff denied making the knife, and he asked Lancaster to submit him to a computer-voice stress analysis ("CVSA") test. (*Id*.) Lancaster refused. (*Id*.)

On November 1, 2012, Plaintiff was transferred from ad seg in housing unit 3B to ad seg in housing unit 2A. (*Id*.) Housing unit 3B was typically used for TASC, and housing unit 2A was mostly used for long term segregation. (*Id*.) Plaintiff remained in administrative segregation at

PCC until he was transferred to the Eastern Reception Diagnostic and Correctional Center ("ERDCC") on January 22, 2013. (*Id.* at 4.) Although Defendant Steele received a letter on November 1, 2012 (dated October 31, 2012) stating that Plaintiff and inmate Jordan made the knife, the inmate who had purportedly signed the letter denied doing so to Defendant Lancaster, and Lancaster found that the signature on the letter and the inmate's signature did not match. (*Id.* at 3.) Defendant Lancaster subsequently reported to Defendant Steele that the only information connecting inmate Jordan to the knife was the unreliable letter. (*Id.*)

Nevertheless, at Plaintiff's initial classification hearing on November 6, 2012, he was assigned to ad seg. (*Id.*) Defendant Johnson approved the classification committee's recommendation for the safety and security of the institution because Plaintiff was suspected of making a knife at the metal factory. (*Id.*) Plaintiff alleges that Defendants, including Defendant Lancaster, performed the investigation resulting in Plaintiff's transfer to ad seg in retaliation for *Webb*. (*Id.*) In support of this allegation, Plaintiff claims various Defendants made statements during the investigation demonstrating their retaliatory motives. (*Id.*) Plaintiff claims Defendant Lancaster made the following such statements:

"You won't file another lawsuit here."

"Whether you're involved or not, this will at least get you out of here."

"You're still here hey."

[Doc. No. 53 at ¶¶ 37, 81]. Plaintiff attributes the following statements to Defendant Pruitt:

"Stop filing lawsuits, when will you guys realize we run this prison?"

"You can get your legal material at another institution."

[Id. at ¶¶ 48, 82]. Finally, Plaintiff claims Defendant Bryan stated as follows:

"Lancaster wants you off the yard." (made in reference to Plaintiff's legal activities).

"Just drop the lawsuit."

[Id. at ¶ 80]. Plaintiff referenced some of these statements in his deposition as well. [Doc. No. 126-2, Plaintiff's Deposition at p. 16].

(*Id*. at 3-4.)

### III.     PLAINTIFF'S RETALIATION CLAIM

Defendants concede that Plaintiff properly exhausted his administrative remedies regarding his confinement in administrative segregation beginning on November 1, 2012 and lasting until January 22, 2013. (*Id*. at 7.) Further, the Court found that Plaintiff properly exhausted the interrelated adverse actions taken against him including that (1) he was wrongfully investigated for the knife incident, (2) denied the opportunity to take a computer-voice stress analysis ("CVSA") test, and (3) wrongfully transferred from one segregation unit to another segregation unit, all in retaliation for filing his lawsuit in Webb. (*Id*. at 12.) The Court found that genuine disputes of material fact exist as to whether Plaintiff was subject to adverse action and whether that the alleged adverse action was motivated in some way by his filing of suit in *Webb*. (*Id*.)

#### A.     Plaintiff's Legal Authority

In order to establish his retaliation claims under § 1983, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subject to adverse action; and (3) "the adverse

action was motivated at least in part by the exercise of the protected activity." *Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015) (citing *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807–08 (8th Cir. 2012)). Defendants concede that Plaintiff "can show the first prong of his retaliation claim," because filing a civil rights law suit is a constitutionally protected activity. Goff v. Burton, 7 F.3d 734, 736 (8th Cir. 1993); Sanders v. St. Louis Cnty., 724 F.2d 665, 666 (8th Cir. 1983). In fact, the Eighth Circuit determined in this case that that filing a § 1983 claim against prison officials is protected conduct under the First Amendment. *Davis v. Lancaster*, 577 Fed. Appx. 638 (8th Cir. Oct. 7, 2014).

1. Adverse Action

Defendants concede that placement in administrative segregation in an adverse action. *See Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004). Further, "[A]n inmate 'need not show a separate, independent injury as an element of his case' because 'when retaliatory conduct is involved, there is no independent injury requirement.'") *See Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) (quoting Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

At trial, Plaintiff will seek to prove additional, interrelated adverse actions Defendants took against Plaintiff. These are (1) that Plaintiff was wrongfully investigated for the knife incident, (2) denied the opportunity to take a computer-voice stress analysis ("CVSA") test, and (3) wrongfully transferred from one segregation unit to another segregation unit.

2. Causal Relationship

The Eighth Circuit determined that the statements attributed to several Defendants in Plaintiff's sworn Second Amended Complaint are sufficient to create a genuine issue of material fact that Plaintiff's placement in ad seg was "motivated at least in part by" his civil rights lawsuit. *Davis v. Lancaster*, 577 F. App'x 638, 639 (8th Cir. Oct. 7, 2014) (citing *Spencer*, 738

F.3d at 911); *see also id*. ("We note that Davis did not assert in his complaint that he was wrongfully disciplined; rather he asserted that impermissible retaliation was a motivating factor for adverse actions taken against him.").

The Court noted that the statements were allegedly made by Defendants shortly after the Court in *Webb* denied the defendants' motion to dismiss and issued a case management order. Since most pro se prisoner cases brought i*n forma pauperis* in the Court are dismissed during 28 U.S.C. § 1915 pre-service review, or through the granting of a pre-answer motion to dismiss, it would follow logically that prison staff would be motivated to retaliate against an inmate after a lawsuit against them survived a motion to dismiss and a case management order was issued. (Doc. 142, at 16.)

### B. Defendants' Qualified Immunity Defense

The Court determined that Defendants are not entitled to qualified immunity. (*Id*. at 17). The right to file lawsuit was clearly established at the time of the deprivation. (*Id*.)

Respectfully submitted,

**THE SIMON LAW FIRM, P.C.**

*/s/ Anthony G. Simon*
Anthony G. Simon, Bar No. 38745
800 Market Street, Suite 1700
St. Louis, MO 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
*ATTORNEY FOR PLAINTIFF*
*Frederick P. Davis*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May 2018 the foregoing was filed electronically with the Clerk of the Court to be served upon all parties by operation of the Court's electronic filing system.

*/s/ Anthony G. Simon*_____